TOREY DEDMOND GANT,

        Plaintiff,

        v.                          Case No. 24-CV-1603

ANDRE RUFFIN,

        Defendant.

## DECISION AND ORDER

Plaintiff Torey Dedmond Gant is representing himself in this 42 U.S.C. § 1983 action. Gant is proceeding on a Fourth Amendment claim based on allegations that Defendant Security Transport Services Agent Andre Ruffin conducted an unreasonable strip search during a jail transfer. On April 22, 2026, Agent Ruffin filed a motion for summary judgment. (ECF No. 47.) For the following reasons, Agent Ruffin's motion for summary judgment will be granted and the case will be dismissed.

### PRELIMINARY MATTERS

Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file a statement of proposed material facts as to which it contends there is no dispute and that entitle it to judgment as a matter of law. Civil L.R. 56(b)(1). The statement of proposed facts should consist of numbered paragraphs containing short factual statements with specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L.R. 56(b)(1)(C). Agent Ruffin submitted proposed findings of fact in support of his motion for summary judgment in compliance with the local rules. (*See* ECF No. 48.)

A party opposing a motion for summary judgment must file a response to the moving party's proposed facts to make clear to the Court which, if any, of the proposed facts are in dispute. The opposing party must respond to *each* paragraph. Civil L.R. 56(b)(2)(B). Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment. Civil L.R. 56(b)(4).

Agent Ruffin, as required by the local rules, included Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56 along with his motion for summary judgment. (*See* ECF No. 47.) In addition, the day after Agent Ruffin filed his motion for summary judgment, the Court entered a notice and order informing Gant that he was required to "respond to each of the proposed facts by agreeing with each proposed fact or explaining why he disagrees with a particular proposed fact." (ECF No. 54 at 1.) The Court also explained that "[i]t is not enough for Gant to file only a declaration telling his side of the story. Civil L.R. 56(b)(2)(B) requires Gant to respond to *each* proposed fact." (*Id.*) The Court warned Gant that if he "does not respond to a proposed fact, the Court will assume that Gant does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." (*Id.* at 1–2.)

On May 18, 2026, Gant filed a notarized affidavit and exhibits in response to Agent Ruffin's motion for summary judgment. Gant did not, however, respond to Agent Ruffin's proposed facts or the legal arguments in Agent Ruffin's legal brief. Accordingly, as the Court warned Gant would happen if he failed to respond to Agent Ruffin's proposed facts, those facts are deemed admitted for the purpose of deciding summary judgment. *See Phoneprasith v. Greff*, No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L.R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021)

(same). With these considerations in mind, the Court turns to the substance of Agent Ruffin's motion for summary judgment.

## BACKGROUND

Security Transport Services (STS) provides law enforcement agencies throughout the country with extradition services and transports detainees from one jail to another. STS employs Ruffin as an agent. In this role, Agent Ruffin is responsible for driving a secure transport vehicle to the necessary location, retrieving the detainees/inmates, driving them to their new location, and ensuring their safe and timely arrival at the new correctional facility.

On October 1, 2024, the State of Missouri ordered the extradition of Gant from Minnesota to Missouri. STS contracted with the Greene County Sheriff's Department in Springfield, Missouri to move Plaintiff from his location in Minnesota to Greene County Jail. On October 21, 2024, while in the scope of employment as an STS agent, Agent Ruffin retrieved Gant from the Rice County Jail in Faribault, Minnesota. Agent Ruffin also retrieved four other detainees from various nearby jails with extradition orders to move those detainees to other locations throughout the country.

It was not feasible to complete Gant's transport along with the other detainees to their various destination facilities in one day. As a result, STS arranged for Gant and the other detainees in Agent Ruffin's charge to spend one night at the Milwaukee County Jail. Gant and the other detainees arrived at the Milwaukee County Jail at 12:36 a.m. on the morning of October 22, 2024. The detainees were booked into the Milwaukee County Jail and left in the care of jail staff.

Agent Ruffin returned later that morning to retrieve the detainees and continue the extradition transportation process. STS procedures required that Agent Ruffin perform either a pat down search or visual strip search of the detainees before allowing them into the transport

vehicle.  STS implemented is policy for the "[s]afety of STS employees, detainees, and the public." (ECF No. 51-1 at 2.)  Detainees held overnight at jail facilities may have the opportunity to smuggle contraband, including drugs or items that could be used as weapons, out of such facilities, and some detainees may attempt to use violence and/or escape during the transportation process. The relevant STS procedures provide:

> **Pat-Down/Strip Search:** No detainee will be transported without the officer/agent conducting a pat-down/strip search of the detainee, except when exigent circumstances pose a safety hazard or danger to the officer/agent, detainee, or public.  In the case where a search has not been conducted, STS will not transport until the circumstances have been resolved to the Chief's satisfaction. . . .

> **Methodology:** All detainees will be appropriately strip searched or patted down prior to application of the restraints. . . .

> **Decision to Search:** Officers/Agents will conduct a search at the time of pick up of all detainees being transported. . . .

> **General - Strip Search:** A strip search requires a person to remove or arrange some or all clothing to permit a visual inspection of the person's breasts, buttocks, or genitalia related to searches for contraband.

> **Strip Search Conduct:** Generally during a strip search, the detainee being searched should remove their own clothing unless they refuse to cooperate.  Officers/Agents should not touch the detainee during a strip search unless the detainee refuses to remove any article of clothing or otherwise impedes the officer/agent in the performance of their duties.  In those rare instances where an officer/agent is required to touch a detainee or remove clothing, the circumstances must be documented.  If a strip search cannot be performed, then execute a pat-down search. . . .

> **General - Body Cavity Search:** A body cavity search is any internal search consisting of the visual or physical intrusion into the rectal or vaginal cavity.

> **Medical Practitioner and Medical Facility Requirement:** Officers/Agents are prohibited from conducting physically intrusive body cavity searches.  This type of body cavity search should be conducted only under the most exceptional circumstances, and only by medical practitioners at a medical facility.

> **Supervisory Approval for Body Cavity Searches:** Body cavity searches will be conducted only after being approved by the Chief and after obtaining consent or a search warrant. . . .

4

(*Id.* at 3, 5–8.) Given that the detainees spent the night in a large urban jail away from Agent Ruffin's supervision, pursuant to STS policy, Agent Ruffin elected to perform visual strip searches of the detainees to ensure that they did not obtain any contraband, including weapons.

After Agent Ruffin retrieved the detainees, he directed them to the Milwaukee County Jail's release room to sign them out of the jail and into STS custody. The release room contains a floating island-style desk in the center of the room. The room also contains individual change-out stalls pushed up against one wall. The stalls are enclosed on one side by the wall and two other sides by half-sized walls, providing privacy to those within the stalls. In addition to Agent Ruffin and the detainees, three other individuals were in the release room: a female STS employee, a female Milwaukee County Jail employee sitting at the center desk, and a male Milwaukee County Jail employee.

Agent Ruffin led the detainees to the change-out stalls in the release room, and each detainee entered an individual stall. After completing a visual strip search of one of the detainees, Agent Ruffin began the process of searching Gant. Agent Ruffin asked Gant to remove his own clothing. Gant removed his clothing. Agent Ruffin then requested that Gant turn around, bend over, cough, and move various parts of his body for a visual inspection. Agent Ruffin did not touch Gant at any point during the search, insert anything into Gant, or make any sexual or otherwise degrading comments to Gant. Following the conclusion of the search, Agent Ruffin provided Gant with his clothing to redress. There is no evidence that anyone other than Agent Ruffin saw Gant unclothed. Gant could not see other detainees during his search, nor could he see the other detainees unclothed as they were being searched.

After completing Gant's search, Agent Ruffin moved on to perform a visual strip search of the next detainee. As Agent Ruffin began to search that detainee, a Milwaukee County Jail

5

employee informed Agent Ruffin that the Milwaukee County Jail did not perform strip searches of detainees.  On that basis, Agent Ruffin ceased the strip searches and instead performed pat down searches for the remaining detainees.  Following completion of the searches, Agent Ruffin escorted the detainees to his transport vehicle and concluded each of their conveyances.

**SUMMARY JUDGMENT STANDARD**

"A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law."  *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed R. Civ. P. 56(a)).  The Court does not "weigh the evidence and determine the truth of the matter" but rather "determine[s] whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The movant has the burden to show that summary judgment is appropriate.  *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021).  The Court will "read the facts and draw all reasonable inferences in the light most favorable to the non-moving party."  *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) (citation omitted).  Nonetheless, the non-movant must go beyond mere allegations and conclusions and instead support its contentions with proper documentary evidence.  *Foster v. PNC Bank*, 52 F.4th 315, 320 (7th Cir. 2022); *Weaver*, 3 F.4th at 934.  Speculation is insufficient to create a genuine dispute of material fact.  *Id.*  If the movant sustains its burden and shows both that there are no disputed material facts and that it is entitled to judgment as a matter of law, "[t]he court shall grant summary judgment . . . ."  Fed. R. Civ. P. 56(a).

**ANALYSIS**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

6

"[T]he Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020) (citations omitted).

"The 'touchstone' of the Fourth Amendment inquiry is reasonableness." *Haro v. Porter Cty., Indiana*, 129 F.4th 992, 996 (7th Cir. 2025) (citing *Samson v. California*, 547 U.S. 843, 855 n.4 (2006)). "The test of reasonableness," the Supreme Court has explained, "is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Determining whether a search violated a person's Fourth Amendment rights "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* The Court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (citations omitted).

Gant argues that Agent Ruffin violated his Fourth Amendment rights because the search did not comply with STS and Milwaukee County Jail policy. He contends that, under STS's policy, Agent Ruffin was required to obtain the Chief's approval as well as the detainee's consent or a search warrant before performing a body cavity search. Gant also asserts that Milwaukee County Jail policy did not permit strip searches of inmates. As an initial matter, Agent Ruffin did not perform a body cavity search. A body cavity search is an internal search consisting of the visual or physical intrusion into a detainee's rectal or vaginal cavity and requires the Chief's approval as well as the detainee's consent or a search warrant. (*See* ECF No. 51-1 at 8.) Even though Gant was asked to turn around, bend over, cough, and move various parts of his body during the visual search, the search did not involve an internal search of the rectal cavity. Because Agent Ruffin conducted a visual strip search, not a body cavity search, the prior approval and

7

warrant requirements contained in the STS policy did not apply. In any event, even if the search did not comply with STS and Milwaukee County Jail policy, the violation of an internal policy does not, on its own, amount to a constitutional violation. *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). "The only question that matters . . . is whether [the defendant] violated the Fourth Amendment." *Id.*

In this case, no reasonable jury could conclude that the strip search violated Gant's Fourth Amendment rights. Agent Ruffin conducted the search to detect contraband and prevent it from entering STS custody following the detainees' overnight incarceration. Gant asserts that the search was not necessary because he was held in the same cell with the other detainees, they were never in the general population, and at no point were they unsupervised. Agent Ruffin did not supervise the detainees overnight, however, so he did not know whether they had been held in isolation or interacted with others. Plaintiff does not dispute that detainees held overnight at jail facilities may have the opportunity to smuggle contraband, including drugs or items that could be used as weapons, out of such facilities, and some detainees may attempt to use violence and/or escape during the transportation process. Agent Ruffin's decision to search the detainees for contraband before their return to STS custody and entering the transport vehicle was justified. *See Henry*, 969 F.3d at 783 ("When evaluating reasonableness, in the context of strip searches of prisoners as in others, courts must afford prison administrators 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" (quoting *Bell*, 441 U.S. at 547)).

Agent Ruffin's strip search of Gant was limited to a visual inspection and did not involve physical touching. It was conducted in a three-sided change-out stall that provided Gant privacy. No one other than Agent Ruffin saw Gant unclothed. Agent Ruffin did not make any sexual or

otherwise degrading comments to Gant, and he immediately returned Gant's clothing after completing the search.  In sum, the search was reasonable in scope, manner, justification, and place.  Accordingly, Gant's Fourth Amendment claim fails.

## CONCLUSION

For these reasons, Agent Ruffin's motion for summary judgment (ECF No. 47) is **GRANTED**.  This case is **DISMISSED**.  The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin on June 4, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

This order and the judgment to follow are final.  Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment.  *See* Fed. R. App. P. 3, 4.  This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).  If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome.  If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court.  *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious.  *See* 28 U.S.C. § 1915(g).  If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury.  *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b).  Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment.  Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment.  The Court cannot extend these deadlines.  *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.